**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46191**

| | |
|---|---|
| In Re:  Board of Tax Appeals, Appeal No. 16-A-1079. | ) |
| | ) |
| --------------------------------------------------------------- | ) |
| | ) |
| BRIAN STENDER, Canyon County Assessor, | ) |
| | ) |
|     Petitioner-Respondent-Cross Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| SSI FOOD SERVICES, INC., | ) |
| | ) |
|     Respondent-Appellant-Cross Respondent. | ) |

**Boise, May 2019 Term**

**Opinion filed: August 26, 2019**

**Karel A. Lehrman, Clerk**

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Gene A. Petty, District Judge.

The order of the district court is <u>affirmed.</u>

Pickens, Cozakos, PA, Boise, for Appellant-Cross Respondent.  Terri Pickens Manweiler argued.

Canyon County Prosecutor's Office, Caldwell, for Respondent-Cross Appellant. Bradford D. Goodsell argued.

_____

MOELLER, Justice.

## I.      NATURE OF THE CASE

SSI Food Services Inc. (SSI) appeals from the district court's decision rejecting the Board of Tax Appeal's (BTA) 2016 assessed value of SSI's food processing facility in favor of the Canyon County Assessor's (Canyon County) significantly higher valuation. On appeal, SSI contends that the district court erred when it modified the BTA's valuation because: (1) Canyon County did not meet its burden of proving that the BTA's valuation was erroneous; (2) the modified valuation is not supported by substantial and competent evidence; and (3) the conclusions of law contained in the district court's findings of fact and conclusions of law are inadequate. SSI also appeals from the district court's decision to allow Canyon County's expert to testify on rebuttal. Canyon County cross-appeals the district court's decision that SSI was not

obligated to pay penalties and interest on the unpaid amount of property taxes. For the reasons stated below, we affirm the district court's decision in all respects.

## II. FACTS AND PROCEDURAL BACKGROUND

In 2013, SSI purchased a food processing plant in Wilder, Idaho, which continues to operate as a meat processing facility. The plant is located on three contiguous parcels of land in Canyon County. The subject parcel (the property) consists of 24.69 acres of land and contains several large commercial buildings.

In 2016, Canyon County assessed the property for tax purposes at $18,286,630, consisting of $538,830 for the land and $17,747,800 for the improvements.[1] SSI appealed the decision to the Canyon County Board of Equalization (BOE). SSI initially claimed the property had a market value of $11,000,000. The BOE upheld Canyon County's valuation of $18,286,630. SSI appealed the decision to the BTA.

In the meantime, both Canyon County and SSI hired experts to appraise the property. Michael Cowan appraised the property for Canyon County and Paul Hyde appraised the property for SSI. Cowan initially claimed the property had a market value of $23,000,000 and Hyde claimed the property had a market value of $6,500,000.[2]

After a hearing, the BTA held that SSI satisfied its burden of proving that the assessed value of $18,286,630 was erroneous; however, the BTA did not find adequate support for Hyde's claimed value of only $6,500,000. The BTA then reduced the value to $10,000,000 without further explanation. Canyon County filed a petition for reconsideration and rehearing. The BTA summarily denied the petition. As a result of the reduced valuation, the Canyon County Treasurer adjusted the amount of taxes owed to reflect the $10,000,000 valuation.

On May 25, 2017, Canyon County filed a petition for judicial review of the BTA's decision. Trial was set to commence on March 20, 2018. Prior to trial, Cowan revised his appraisal report twice.[3] Hyde reviewed Cowan's first revised appraisal. In response, Canyon County hired J. Philip Cook to review Hyde's appraisal report, to bolster Cowan's appraisal report, and to provide his own opinion of value if necessary.[4] In his initial appraisal review,

---

[1] In 2014 and 2015, Canyon County assessed the property (both land and improvements) at $17,440,430 and $17,799,030, respectively. All future references to "the property" include both the land and improvements.
[2] There is no explanation in the record for the discrepancy between SSI's original assessment of $11,000,000 and its expert's later assessment of only $6,500,000.
[3] Cowan first revised his appraisal report in October 2017 and then in January 2018.
[4] Cook's original appraisal is not in the record.

2

Cook reserved the "[r]ight to supplement [his] report after inspection and to address any 'additional relevant information' that comes to light prior to trial." On January 15, 2018, Cook was granted access to inspect the property and later revised his appraisal accordingly.

The parties stipulated to a discovery schedule, agreeing that the disclosure deadline for rebuttal experts was ninety days prior to trial, or December 20, 2017. Canyon County disclosed Cook as a rebuttal expert on December 20, 2017. SSI sought to exclude the testimony and report of Cook, arguing that "[t]he testimony and opinions were not timely disclosed pursuant to the Court's Scheduling Order and the Stipulation." The district court denied SSI's motion.

At trial, Canyon County called Cowan during its case-in-chief, while SSI called three witnesses: Hyde, Dave Kubosumi (SSI's engineering manager), and David Smith (SSI's tax expert). During its rebuttal, Canyon County called Cook. SSI renewed its motion to exclude Cook as an expert. The court denied SSI's motion, but limited Cook's testimony "to why he believes the opinion of Mr. Hyde is incorrect." Cook was not allowed to "[g]o into Hyde's criticism of Cook's report" or bolster Cowan's report. The court also allowed Cook to express his own opinion of value. On May 2, 2018, the district court entered its Findings of Fact and Conclusions of Law, holding that Canyon County "[m]et its burden to show that the value of the property exceeds $10,000,000. The conclusion of the Board of Tax Appeals was erroneous. The market value of the property on January 1, 2016 was, for *ad valorem* purposes, $17,000,000."

As a result of the district court's increased valuation, Canyon County sought additional taxes in the amount of $97,770.12 and interest and penalties in the amount of $18,119.27. SSI objected to the penalties and interest. At the hearing on the matter, Canyon County argued that it should be entitled to interest on the underpayment of taxes during the pendency of the appeal to the district court. SSI argued that it did not owe interest and penalties because "[it] paid all taxes when due." The district court entered its Judgment on June 21, 2018, ordering SSI to pay additional property taxes totaling $97,770.12, with no added interest or penalties.

### III.    STANDARD OF REVIEW

"Whenever any taxpayer, assessor, the state tax commission or any other party appearing before the board of tax appeals is aggrieved by a decision of the board of tax appeals or a decision on a motion for rehearing, an appeal may be taken to the district court . . . ." I.C. § 63-3812. "In a challenge to the assessor's valuation of the property, 'the value of property for purposes of taxation as determined by the assessor is presumed to be correct . . . .' " *Merris v.*

3

*Ada Cty.*, 100 Idaho 59, 64, 593 P.2d 394, 399 (1979) (quoting *Appeals of Sears, Roebuck & Co.*, 74 Idaho 39, 46, 256 P.2d 526, 530 (1953)).

Appeals "shall be heard and determined by the court without a jury in a trial de novo on the issues in the same manner as though it were an original proceeding in that court." I.C. § 63-3812(c). We have defined trial de novo to mean "a trying of the matter anew—the same as if it had never been heard before." *Canyon Cty. Bd. of Equalization v. Amalgamated Sugar Co., LLC*, 143 Idaho 58, 61, 137 P.3d 445, 448 (2006) (quoting *Gilbert v. Moore*, 108 Idaho 165, 168, 697 P.2d 1179, 1182 (1985)).

"The burden of proof shall fall upon the party seeking affirmative relief to establish that the decision made by the board of tax appeals is erroneous. A preponderance of the evidence shall suffice to sustain the burden of proof." I.C. § 63-3812(c). "Factual determinations are not erroneous when they are supported by competent and substantial evidence even though conflicting evidence exists." *Greenfield Village Apartments, L.P. v. Ada Cty.*, 130 Idaho 207, 209, 938 P.2d 1245, 1247 (1997). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *The Senator, Inc. v. Ada Cty., Bd. of Equalization*, 138 Idaho 566, 574, 67 P.3d 45, 53 (2003). "Therefore, this Court's inquiry is limited to whether the district court's decision, based on the testimony and evidence received and not objected to [as incompetent], was clearly erroneous." *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 768, 291 P.3d 442, 451 (2012).

"This Court exercises free review over the district court's conclusions of law to determine whether the court correctly stated the applicable law and whether the legal conclusions are sustained by the facts found." *Id.* at 767, 291 P.3d at 450 (quoting *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011)). This Court also exercises free review over the construction and application of a statute. *Amalgamated Sugar Co., LLC*, 143 Idaho at 60, 137 P.3d at 447.

"The standard of review of a trial court's decision regarding the admission of evidence in rebuttal is one of deference to the trial court." *Van Brunt v. Stoddard*, 136 Idaho 681, 686, 39 P.3d 621, 626 (2001). "Decisions regarding the admission of evidence are revised only upon a showing of an abuse of discretion." *Id.* When this Court reviews an alleged abuse of discretion by a trial court, this Court must consider four essential questions: "Whether the trial court: (1)

4

correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## IV.    ANALYSIS

**A.    The district court did not err in modifying the BTA's valuation of the property.**

SSI contends that the district court erred when it modified the BTA's valuation because Canyon County did not satisfy its burden of proof and the court's opinion of value is not supported by substantial and competent evidence. SSI also argues that the district court's conclusions of law are insufficient because the court should have independently analyzed each of the three appraisal methods.

### i.    The district court's findings of fact are supported by substantial and competent evidence.

SSI contends that the district court erred when it modified the BTA's valuation because Canyon County did not meet its burden of proving that the BTA valuation was erroneous, and even if it had, the court's modified valuation is clearly erroneous because the court relied on the flawed methodologies used by Canyon County's experts in their appraisals. Canyon County argues that it met its burden of proof and that the district court's valuation is not erroneous because it is supported by substantial and competent evidence.

SSI's qualms are generally factual in nature and go towards rebutting the reliability of Canyon County's experts' appraisals. *See PacifiCorp*, 153 Idaho at 769, 291 P.3d at 452 ("The reliability and credibility of the methods employed are questions of fact . . . ."); *Wurzburg v. Kootenai Cty.*, 155 Idaho 236, 245, 308 P.3d 936, 945 (Ct. App. 2013) ("Market value is essentially a factual issue."); *Sammons v. C.I.R.*, 838 F.2d 330, 334 (9th Cir. 1988) ("Valuation is a question of fact."). Therefore, we must determine whether the district court's findings regarding the reliability of the experts' respective methodologies and the accuracy of their resulting valuations are clearly erroneous.

In *PacifiCorp*, we recognized that in property valuation cases, the district court often faces a "battle of the experts" and the "difficult task of evaluating competing theories of valuation that, for the most part, utilized accepted valuation methods" and "were utilized within the bounds of their respective professional standards." 153 Idaho at 767, 291 P.3d at 450. When a party merely argues that its expert's appraisal is more reliable than the appraisal of the other

party's expert, this Court will not disrupt the district court's determination of weight that is supported by substantial and competent evidence. *City of McCall v. Seubert*, 142 Idaho 580, 586, 130 P.3d 1118, 1124 (2006). Similarly, this Court will not reweigh the evidence in order to assess how one approach could be more reliable. *PacifiCorp*, 153 Idaho at 773, 291 P.3d at 456. "Individual irregularities and inequality in taxation will always exist. It is a process which cannot be reduced to an exact science. The law does not require exactitude, but it does require uniformity." *The Senator, Inc.*, 138 Idaho at 572, 67 P.3d at 51 (quoting *Anderson's Red & White Store v. Kootenai Cty.*, 70 Idaho 260, 265, 215 P.2d 815, 818 (1950)).

The law is well-established in Idaho regarding assessments of real property for tax purposes. Generally, "[a]ll real . . . property subject to property taxation must be assessed annually at market value for assessment purposes as of 12:01 a.m. on the first day of January in the year in which such property taxes were levied . . . ." I.C. § 63-205(1). Market value is to be determined according to the requirements of Title 63, Idaho Code, and the rules promulgated by the State Tax Commission. *Id.*

> "Market value" means the amount of United States dollars or equivalent for which, in all probability, a property would exchange hands between a willing seller, under no compulsion to sell, and an informed, capable buyer, with a reasonable time allowed to consummate the sale, substantiated by a reasonable down or full cash payment.

I.C. § 63-201(15).

Rule 217 of the Property Tax Administrative Rules adopted by the Idaho State Tax Commission provides that when assessing real property, the assessor shall consider the sales comparison approach, the cost approach, and the income approach. IDAPA 35.01.03.217.02. Rule 217 also provides that "[m]arket value for assessment purposes shall be determined through procedures, methods, and techniques recommended by nationally recognized appraisal and valuation associations, institutes, and societies and according to guidelines and publications approved by the State Tax Commission." IDAPA 35.01.03.217.03. Additionally, Idaho Code section 63-208(1) requires "that the actual and functional use shall be a major consideration when determining market value for assessment purposes."

Michael Cowan appraised the property for Canyon County. Cowan considered all three acceptable appraisal methods but only used two of the approaches: the cost approach and the sales comparison approach. Cowan did not use the income approach "due to the lack of investor owned food-grade manufacturing facilities in the area . . . ." Under the cost approach, the record

reflects that Cowan developed an opinion of value by separately determining a land value and a depreciated cost of improvements. For the land value, Cowan compared four local land sales and made quantitative adjustments to the sale prices for time, size, and location in order to make them more comparable. After comparing the adjusted prices, Cowan concluded that the land had a value of $845,000. Cowan then determined the depreciated cost of improvements by calculating the replacement cost new (RCN) for all improvements, less depreciation. Cowan concluded that the RCN for all improvements was $44,636,270 and depreciation was $25,610,562 ($14,451,494 for physical depreciation and $11,159,068 (25%) for functional obsolescence). After deducting depreciation from the RCN, Cowan concluded that the total depreciated cost of improvements was $19,025,708. Adding the land value, Cowan concluded that the market value of the property under the cost approach was $19,870,000. Under the sales comparison approach, the record shows that Cowan compared four recent sales in Idaho and made quantitative adjustments to the sale prices for market, size, location, age, time of sale, condition of the property, quality of construction, and property utility in order to make them more comparable. Cowan also added tenant improvement costs in order to take the comparables from "dark" to "in-use." After adjustments, Cowan concluded that the market value of the property under the sales comparison approach was $18,540,000. In reconciliation, Cowan concluded that the market value of the property for assessment purposes was $19,500,000.

Paul Hyde appraised the property for SSI. Hyde considered all three approaches but only used two of the approaches: the sales comparison approach and the income approach. Hyde did not use the cost approach "due to the difficulties associated with estimating the amount of depreciation and functional obsolescence in the subject property." Under the sales comparison approach, the record shows that Hyde compared eleven properties nationwide. Hyde then made qualitative adjustments to the sale prices in order to make them more comparable. After adjustments, Hyde concluded that the market value of the property under the sales comparison approach was $6,500,000. Under the income approach, the record shows that Hyde compared lease rates from fourteen properties nationwide. For this property, Hyde chose a lease rate of $3.25 per square foot—85% of the median due to the property's location. Hyde then calculated the net operating income for the property as if it were leased at market rate. After applying a 9.5% capitalization rate to the net operating income ($580,274), Hyde concluded that the market

value of the property under the income approach was $6,100,000. In reconciliation, Hyde concluded that the market value of the property for assessment purposes was $6,500,000.

Canyon County also hired a rebuttal witness, J. Philip Cook, to rebut Hyde's appraisal and to provide his own opinion of value if necessary. In creating his opinion of value, Cook considered all three approaches but only used two of the approaches: the sales comparison approach and the cost approach. Cook relied "heavily on major portions of both appraisals in developing an alternative opinion of value," except for those portions he expressed concern with. Cook concluded that the market value of the property under the cost approach was $17,820,000, and that the market value of the property under the sales comparison approach was $16,500,000. In reconciliation, Cook concluded that the market value of the property for assessment purposes was $17,000,000.

After hearing the evidence presented at trial, the district court decided which appraisal method was most applicable for this type of property and which opinion of value was most accurate. As for the appraisal method, the court found that the cost approach was "the most appropriate, credible, and reliable appraisal method for determining market value of the Wilder Plant." The court made this determination in part because it found the other two approaches unreliable.

The court found that the "[t]he sales comparison approach raised too many issues in this case with adjustments made for post-sale investments" and was, therefore, unreliable. As SSI points out, Cowan made significant adjustments to his comparables in order to take them from "dark" to "in-use." The court recognized this, explaining that it was unclear whether the after-sale expenditures "were due to the poor condition of the property when they were purchased, were necessary to accommodate the business of the new owner, or were expansions of the properties." Therefore, the court decided not to rely on the sales comparison approach.

The court also found that the income approach was unreliable because "[m]ost food processing facilities are not leased . . . ." Even when lease data was available, Hyde—the only expert that used the income approach—had difficulty comparing the property to the other facilities. The court noted Hyde's trial testimony that although he was able to find fourteen lease rates, they were not ideal. Hyde elaborated, stating, "I mean, I don't know a lot about them. I know where they are. I was able to find a little bit of information about them." Hyde also

estimated the subject property's lease rate by "[taking] a guess." Accordingly, the district court decided not to rely on the income approach.

After concluding that the cost approach was the most applicable appraisal method for this property, the district court then determined which opinion of value it thought was most accurate. The court found that "Mr. Cook's opinion of the value of the Wilder Plant was supported by the weight of the evidence and . . . [was] particularly credible and reliable," and that "Mr. Hyde's appraisal value of $6,500,000 was not supported by the weight of the evidence at trial" and "was greatly understated." The court made this finding in part because the property was valued between $11,000,000 and $12,100,000 in 2013 when SSI first acquired it and SSI had since invested approximately $10,000,000 into the property. The court also noted that, in general, market values in Canyon County had increased drastically since 2013.

SSI argues that the district court's finding regarding the cost of improvements to the property is clearly erroneous, because neither SSI nor Canyon County elicited testimony regarding the cost of improvements between 2013 and 2015. SSI's argument is not entirely accurate. Although SSI did not address the cost of improvements, there are several places in the record where Canyon County's expert discusses the cost. For example, Cook states in his review of Hyde's appraisal report, "[b]ased on a summary of expenditures made to repair, remodel, and add to the plant between mid-2013 and mid-2015, CTI-SSI has spent nearly $10.4 million upgrading the property." Cook also testified that in 2013, SSI "[spent] tens of millions of dollars upgrading and expanding [the property]" and that construction work in process from 2013 to 2016 "totaled something like $23 million."

It is undisputed that SSI expanded the property significantly from the date of acquisition in 2013. As evidenced from Hyde's appraisal report, from 2013 to 2016, SSI built or expanded the freezer warehouse, raw receiving, main office, dry warehouse, stuffing, and packaging. SSI's engineering expert, Kubosumi, testified that he "[could not] even count the number of modifications, expansions, whatever you want to call them, throughout the years." Based on records provided to Canyon County by SSI, in 2013 alone, SSI spent $3,740,000 in just additions—*i.e.*, not including repairs and remodeling. As for the remainder of the $10,000,000, it is not entirely clear from the record where Cook obtained some of his numbers. Cowan testified that the numbers came from information provided by "the operations manager, building permits, some of the documents that we've received as far as the investments since the acquisition that

9

was provided by SSI." Cook testified that the numbers came from schedules provided by SSI. It appears SSI provided some information about improvements to Canyon County during discovery, although the parties did not include such evidence in the record. Specifically, Canyon County asked SSI to produce an itemization of all improvements and construction to the property from 2013 to 2015, including any additions, remodels, or repairs. SSI complied with Canyon County's request by providing an itemization of all construction and improvements to the property from 2013 to 2015, which SSI labeled SSI000478 and SSI00547-564. However, none of these documents appear to be in the record on appeal.

Nevertheless, despite having multiple opportunities to rebut Cook's assumptions regarding the cost of improvements, SSI never did. In fact, SSI never provided any definitive value for the improvements. When Canyon County asked Kubosumi at trial whether he could provide the court with the cost of the improvements, he said that he could not off the top of his head. SSI also had the opportunity to address the improvements in its motion for reconsideration of the court's findings and conclusions, but did not do so. Although Canyon County had the initial burden of proof, "[t]he burden of going forward with the evidence shall shift as in other civil litigation." I.C. § 63-3812(c). Simply put, SSI failed to rebut these assertions at trial and is now challenging them on appeal for the first time.

Based on a review of the record, we hold that the district court's findings are supported by substantial, though at times conflicting, evidence. The court was faced with compelling appraisals and it rendered its decision based primarily on the apparent soundness of Cowan's theory of valuation and his ability to defend that theory during cross-examination. The court also found Cook's rebuttal of Hyde's review compelling and supportive of Cowan's appraisal. The district court did not err in accepting the method of valuation and evidence in support presented by Canyon County. It follows then, that Canyon County satisfied its burden of proving at trial that the BTA valuation was erroneous. Because the district court's findings are not clearly erroneous, the issue, then, is whether the district court properly applied the applicable law to the appropriate facts.

ii. The district court sufficiently applied the proper law to the appropriate facts in reaching its ultimate conclusion.

SSI contends that the district court's conclusions of law are insufficient because the court did not provide any reasoning behind its ultimate conclusion. According to SSI, the court should have independently valued the property under each appraisal methodology and should have

addressed each concern raised by SSI. Had the court done so, it would have concluded that Canyon County's experts were unreliable. Canyon County contends that the district court's conclusions are sufficient because they are supported by its findings of fact, which are supported by substantial and competent evidence.

"This Court exercises free review over the district court's conclusions of law to determine whether the court correctly stated the applicable law and whether the legal conclusions are sustained by the facts found." *PacifiCorp*, 153 Idaho at 767, 291 P.3d at 450 (quoting *Kennedy*, 151 Idaho at 442, 259 P.3d at 588). "When the court sits as the trier of fact, it is charged with the duty of preparing findings of fact and conclusions of law in support of the decision which it reaches." *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982) (citing I.R.C.P. 52(a)). In *Pope*, the Court explained why trial courts have been entrusted with this important duty:

> The purpose behind requiring the court to "find the facts specially and state separately its conclusions of law thereon" is to afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case. *Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 497, 531 P.2d 584, 585 (1975).
>
> . . . .
>
> Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered, *In the Matter of the Estate of Lewis*, 97 Idaho 299, 302, 543 P.2d 852, 855 (1975); *Perry Plumbing Co. v. Schuler*, 96 Idaho at 497, 531 P.2d at 585; and, where there is no evidence which would support further findings material to the judgment, the judgment will simply be reversed, the plaintiff having failed to prove his claim.

*Id.* "In reviewing mixed questions of law and fact, 'this Court will differentiate among the fact-finding, law-stating, and law-applying functions of the trial courts.'" *Sells v. Robinson*, 141 Idaho 767, 771, 118 P.3d 99, 103 (2005) (quoting *Haight v. Dales Used Cars, Inc.*, 139 Idaho 853, 855, 87 P.3d 962, 964 (Ct. App. 2003)).

Here, by looking at the district court's decision as a whole, we can determine that the court applied the proper law to the appropriate facts in reaching its ultimate conclusion. The court correctly stated the proper law. The court explained that Idaho requires assessors to determine the market value of the real property using recognized appraisal methods and

techniques as set forth by the state tax commission. Those methods are the sales comparison approach, the cost approach, and the income approach. The court also provided the correct definition of both "market value" and "functional and actual use." There is no one specific way to apply each method. Rather, "[m]arket value for assessment purposes shall be determined through procedures, methods, and techniques recommended by nationally recognized appraisal and valuation associations, institutes, and societies and according to guidelines and publications approved by the State Tax Commission." IDAPA 35.01.03.217.03.

The district court also stated its ultimate conclusion based on the proper law. The court concluded that "Petitioner has met its burden to show that the value of the property exceeds $10,000,000. The conclusion of the Board of Tax Appeals was erroneous. The market value of the property on January 1, 2016 was, for *ad valorem* tax purposes, $17,000,000."

SSI essentially argues that the district court missed the third step, which is the "law-applying" step. In more familiar terms, SSI contends that the court failed to clearly "show its work," so to speak. However, what SSI seeks is not what we require from the lower courts in a petition for judicial review of an appraisal. SSI argues that the court was required to do an independent analysis under each appraisal method. That is incorrect. The district court is not a certified appraiser; accordingly, it is not required to independently analyze the property's value under each method. Rather, "[the] district court may rely on an appraiser's judgment in accepting one valuation over another," *Wurzburg*, 155 Idaho at 245, 308 P.3d at 945 (citing *PacifiCorp*, 153 Idaho at 772, 291 P.3d at 445), which is exactly what the district court did, just in its findings of fact section rather than in its conclusions of law section.

In its findings, the district court explained which methodology it found to be more applicable, which opinion of value it found to be more accurate, and which expert it found to be more reliable. Had some of the court's "findings of fact" been more properly labeled as "conclusions of law," these suggested inadequacies would be less of a concern. Although the district court may not have explicitly applied the law to the facts in its conclusions, by reviewing the findings and conclusions as a whole, we hold that the district court's legal conclusions are sustained by the facts as found. Therefore, we affirm both the district court's conclusion that the BTA valuation was erroneous and that the correct value of the property in 2016 for ad valorem purposes was $17,000,000, because both conclusions are supported by substantial and competent evidence.

**B. Although the district court abused its discretion in allowing some of Cook's "rebuttal" testimony, the error was harmless.**

SSI contends that the district court abused its discretion in permitting Cook to testify as a rebuttal expert for Canyon County and allowing his testimony and report to be used at trial. SSI argues that Cook does not rebut any new information or issues that were disclosed by Hyde and that Canyon County hired Cook solely to bolster Cowan's unreliable appraisal. Canyon County contends that Cook's review of Hyde's appraisal report (as well as Hyde's criticisms of Cowan's appraisal report) were normal, necessary, and perfectly acceptable for rebuttal and did not exceed the court's boundaries of discretion.

"The standard of review of a trial court's decision regarding the admission of evidence in rebuttal is one of deference to the trial court." *Van Brunt*, 136 Idaho at 686, 39 P.3d at 626. "Decisions regarding the admission of evidence are revised only upon a showing of an abuse of discretion." *Id.* As previously noted, when this Court reviews an alleged abuse of discretion by a trial court, this Court must consider four essential questions: "Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

"Rebuttal evidence is evidence that explains, repels, counteracts, or disproves evidence which has been introduced by or on behalf of the adverse party." *Easterling v. Kendall*, 159 Idaho 902, 913, 367 P.3d 1214, 1225 (2016) (quoting *Van Brunt*, 136 Idaho at 685–86, 39 P.3d at 625–26). "The mere fact that testimony might well have been presented during [a party's] case in chief does not, by itself, make it inadmissible for rebuttal." *State v. Moses*, 156 Idaho 855, 867, 332 P.3d 767, 779 (2014) (quoting *State v. Rosencrantz*, 110 Idaho 124, 129, 714 P.2d 93, 98 (Ct. App. 1986)).

Here, the parties stipulated to a scheduling order, whereby the parties agreed that the disclosure deadline for rebuttal experts was ninety days prior to trial, or December 20, 2017. The parties also stipulated that a rebuttal expert must "[r]ebut new information or issues disclosed or raised." Pursuant to the stipulation, disclosures proceeded as follows: On September 14, 2017, Canyon County disclosed Cowan as its appraisal expert along with his BTA appraisal report. On October 18, 2017, SSI disclosed Hyde as its appraisal expert along with his BTA appraisal report. On November 19, 2017, Canyon County disclosed Cowan's first revised appraisal report.

On December 18, 2017, SSI disclosed Hyde's review of Cowan's first revised appraisal report. Two days later, on December 20, 2017 (the last day for disclosure of rebuttal experts), Canyon County disclosed Cook. Canyon County did not specifically label Cook as a rebuttal expert. Rather, Canyon County disclosed Cook as an expert "[i]n addition to the witnesses previously disclosed. . . ." Cook reviewed both Hyde and Cowan's appraisals and provided his own opinion of value. On January 31, 2018, SSI disclosed Hyde's review of Cook's appraisal review. On February 20, 2018, Canyon County disclosed Cook's revised appraisal review and Cowan's second revised appraisal report.

SSI filed a Motion to Exclude Expert Witness Testimony and Strike Expert Opinions, asking the district court to exclude Cook as an expert altogether at trial and to strike his opinions from the record. SSI argued that Cook's opinions are not true rebuttal as they merely bolster Cowan's revised appraisal. In response, Canyon County represented that Cook was a rebuttal expert hired to testify regarding Hyde's appraisal. The district court denied SSI's motion because "[Canyon County] timely disclosed J. Philip Cook as a rebuttal expert." However, the court held that it was "unable to determine, on the record now before it, whether Mr. Cook's opinions are rebuttal expert opinions" because "neither party filed a copy of any expert report with th[e] court." Thus, the court did not entirely discount SSI's objection, allowing SSI to raise it again at trial. Accordingly, because Cook was in fact timely disclosed as a rebuttal witness, Canyon County correctly states that "[t]he question is not whether Cook was or was not a rebuttal witness, but whether his testimony and the evidence presented through him was in rebuttal of SSI's case in chief." Based on our review of the record, we conclude that only some of Cook's testimony was true rebuttal.

During its case-in-chief, Canyon County called Cowan to testify about his appraisal. SSI cross-examined Cowan. SSI then called Hyde during its case-in-chief to testify about his appraisal and to criticize Cowan's appraisal report. Canyon County cross-examined Hyde. During rebuttal, Canyon County called Cook to rebut Hyde's appraisal, to bolster Cowan's appraisal, and to provide his own opinion of value. SSI renewed its motion to exclude Cook as an expert. The court denied SSI's motion in part, limiting Cook's testimony to rebutting Hyde's opinion of value and Hyde's criticisms of Cowan's opinion of value. Cook was also permitted to express his own opinion of value because the court believed it was "appropriate in rebuttal to express an opinion of value that is different." However, Cook was not allowed to go into Hyde's

14

criticisms of Cook's review and could not bolster Cowan's appraisal report. As a result, the court struck Cook's review of Cowan's appraisal report. Finally, in surrebuttal, SSI recalled Hyde to rebut the testimony of Cowan and Cook.

Approximately half of Cook's appraisal review is devoted to rebutting Hyde's appraisal. Another quarter of the review is devoted to reviewing Cowan's appraisal, which mainly bolsters it. The district court properly struck that portion of the review, finding that it was not true rebuttal. The remaining quarter of Cook's review is devoted to his alternative opinion of value. In creating his opinion of value, Cook relied heavily on portions of both Hyde and Cowan's appraisals, except for those portions that Cook expressed concern with. Hyde had the opportunity to review Cook's initial appraisal and to critique it before trial, which he in fact did.[5]

Cook's review of Hyde's appraisal report fits within the description of rebuttal evidence. SSI hired Hyde to both appraise the property and to review Cowan's appraisal of the property. In response, Canyon County hired Cook to rebut Hyde's appraisal report and Hyde's review of Cowan's appraisal report. After Hyde testified at trial to both the reliability of his appraisal and the unreliability of Cowan's appraisal, Canyon County called Cook to rebut Hyde's testimony. The district court recognized that, because SSI hired an expert to criticize Cowan's report, Canyon County should have a similar opportunity. Therefore, the district court did not abuse its discretion in allowing this type of testimony. However, the district court went too far in allowing Cook to provide his own opinion of value.

Cook's affirmative opinion of value exceeds the outer limits of true rebuttal. Cook's opinion merely bolsters Cowan's appraisal report and corrects any discrepancies mentioned by Hyde in his review of Cowan's appraisal report. By allowing Cook to provide his own opinion of value, the district court allowed Canyon County another bite of the apple. Accordingly, the district court abused its discretion in allowing Cook to provide his own opinion of value.

Nonetheless, SSI was not prejudiced by the district court's decision because each finding in the court's decision is supported by either Cowan's appraisal report or Cook's review of Hyde's appraisal report. Specifically, both Cowan's appraisal report and Cook's review of

---

[5] SSI also took issue with Cook's revised appraisal review, which was not disclosed until one month before trial. The district court noted this issue at trial but allowed the revised appraisal review to be admitted. The district court reasoned that Cook reserved the right to amend his review after he was provided an opportunity to visit the property, which did not occur until mid-January 2018. It was also unclear to the district court what the contents of the original appraisal review were as it was not in the record and when asked at trial what the differences were, neither side could elaborate except that Cook's overall opinion of value increased by $1,400,000.

Hyde's appraisal report support the court's finding that the property was valued between $11,000,000 and $12,100,000 in 2013 and that market values in that area had increased since 2013, and Cook's review of Hyde's appraisal report supports the finding that from 2013 to 2015, SSI had invested approximately $10,000,000 into the property. Based on these findings, the district court ultimately concluded that the BTA's valuation of only $10,000,000 was erroneous. The only part of the district court's decision that is supported solely by Cook's appraisal review is the court's finding that the market value of the property was $17,000,000. This finding, however, actually favors SSI because it is significantly lower than Cowan's assessment of $19,500,000. Therefore, although the district court abused its discretion in allowing Cook to testify as to his own opinion of value, SSI was not prejudiced by the court's decision. Accordingly, we conclude that the district court's decision in allowing Cook to testify as a rebuttal expert witness was harmless.

### C. The district court correctly held that SSI was not obligated to pay penalties and interest on the unpaid amount of property taxes.

Canyon County contends that the district court should have required SSI to pay penalties and interest on the unpaid amount of property taxes ultimately owed based on the court's modified valuation of $17,000,000. SSI contends that it paid all taxes when they were due; the additional taxes only became due upon the district court's judgment.

Property taxes "[m]ay be paid in full or paid in two halves, the first half on or before December 20 with a grace period extending to June 20 for the second half if the first half is totally paid." I.C. § 63-903(1). "If the second one-half ( ½ ) is not totally paid on or before June 20, late charges as defined in section 63-201, Idaho Code, and interest as provided in section 63-1001, Idaho Code, shall be assessed." I.C. § 63-903(4). A "late charge" is defined as "a charge of two percent (2%) of the delinquency." I.C. § 63-201(12). "Delinquency" is defined as "any property tax, special assessment, fee, collection cost, or change collected in the same manner as property tax, that has not been paid in the manner and within the time limits provided by law." I.C. § 63-201(7). "To avoid delinquency, total payment must be made in full to the county tax collector by the due date." I.C. § 63-1001. "Interest on a delinquency will be charged at one percent (1%) per month calculated from January 1 following the year the tax lien attached, provided however, that the interest shall not be charged on collection costs." *Id.*

When an aggrieved party appeals a property tax determination to the BTA or the district court, the party is required to pay taxes pending any appeal. *See* I.C. § 63-511(1) ("Nothing in

this section shall be construed so as to suspend the payment of property taxes pending said appeal."); I.C. § 63-3812(d) ("Nothing in this section shall be construed to suspend the payment of taxes pending any appeal . . . ."). If first appealed to the BTA, the BTA's decision only becomes final "[i]n all cases which are not appealed to the district court within the prescribed time . . . ." I.C. § 63-3813. Once that time has passed, "[t]he decision of the board of tax appeals shall be conclusive and all records shall be corrected to comply with the decision of the board." *Id.*

Following an appeal to the district court, "the court may affirm, reverse or modify the order, direct the tax collector of the county or the state tax commission to refund any taxes found in such appeal to be erroneously or illegally assessed or collected or *may direct the collection of additional taxes in proper cases*." I.C. § 63-3812(c) (emphasis added). If the district court refunds any taxes found to be erroneously or illegally assessed or collected, the refund shall include any "interest due on the refund of such tax . . . ." I.C. § 63-1305(2). The Legislature did not create a similar provision for when the district court directs the collection of additional taxes. Had the Legislature intended to do so, they would have done so. *See Salinas v. Bridgeview Estates*, 162 Idaho 91, 93, 394 P.3d 793, 795 (2017) ("Statutory interpretation begins with the statute's plain language. . . . When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction.").

Here, the district court was correct in not assessing penalties and interest on the additional taxes owed because SSI paid all taxes when they were due. In 2016, Canyon County assessed the property at $18,286,630. In June 2016, SSI appealed the valuation to the BOE. The BOE upheld the valuation. In August 2016, SSI appealed the BOE's decision to the BTA. In December 2016, SSI paid the first half of taxes based on the $18,286,630 valuation. The second half was not due until June 2017. In March 2017, the BTA reduced the value of the property to $10,000,000, and the Canyon County Treasurer adjusted the amount of taxes owed to reflect that value. The following month, SSI paid the second half of taxes due based on the $10,000,000. Subsequently, the district court modified the value of the property to $17,000,000 and ordered SSI to pay additional taxes in the amount of $97,770.12. Promptly after the court entered its Judgment on June 21, 2018, SSI paid the remainder of the taxes owed. SSI was never "delinquent" on its 2016 taxes. SSI paid all taxes that were due when they were due.

17

Accordingly, we affirm the district court's holding that Canyon County is not entitled to interest or penalties on the additional taxes.

**D. Neither party is entitled to attorney fees on appeal.**

Both parties seek attorney fees on appeal under Idaho Code section 12-117 and Idaho Appellate Rule 41. Idaho Appellate Rule 41 sets forth the procedure for awarding attorney fees in appeals before this Court. *Swanson v. Kraft*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989). Section 12-117 provides the authority to award such fees. Under section 12-117(1), attorney fees may be awarded as follows:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

We hold that neither side is entitled to attorney fees on appeal because both sides acted with a reasonable basis in fact and law. As for Canyon County's request for attorney fees, although SSI failed to cite authority to support several of its arguments, those arguments were factually supported and found to be meritorious in an earlier proceeding before the BTA. As for SSI's request for attorney fees on the cross-appeal, SSI provides no argument as to why it is entitled to attorney fees. Although we agreed with SSI in denying Canyon County's cross-appeal for penalties and interest, this was an issue of first impression. Therefore, we conclude that neither party is entitled to attorney fees on appeal.

## V.    CONCLUSION

We affirm the order of the district court as it relates to each issue presented on appeal. Inasmuch as both sides prevailed in part, no costs are awarded.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**